### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

DEREK OSEI-ASSIBEY
    *Plaintiff,*

    v.

THE STOP & SHOP SUPERMARKET
COMPANY LLC,
    *Defendant.*

No. 3:20-cv-01911 (VAB)

### RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Derek Osei-Assibey ("Mr. Osei-Assibey" or "Plaintiff") has sued the Stop & Shop

Supermarket Company LLC ("Stop & Shop" or "Defendant") for damages and other equitable

relief arising under Connecticut General Statutes § 46a-60. Def.'s Notice of Removal, ECF No. 1

(Dec. 23, 2020) ("Notice of Removal"). Specifically, Mr. Osei-Assibey is suing for "emotional

and psychological pain and suffering." *Id.*

Stop & Shop has moved for summary judgment on all claims alleged by Mr. Osei-

Assibey. Mot. for Summ. J. , ECF No. 26 (May 05, 2022); Def.'s Mem. of Law in Support of

Def.'s Mot. for Summ. J., ECF No. 27 (May 05, 2022) ("Def.'s Mem.").

For the following reasons, Defendant's motion for summary judgment is **GRANTED in**

**part** and **DENIED in part**.

The disability discrimination claim has been dismissed, but the retaliation claim shall

remain, but it will be limited, consistent with this opinion.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    A.      **Factual Background**

        1.   **Stop & Shop's Policy on Discrimination and Retaliation**

Stop & Shop's Equal Employment Opportunity Policy (the "EEO Policy") provides that "decisions regarding employment and advancement at Stop & Shop are based on qualifications and merit," and it prohibits "discrimination against any individual based on . . . legally recognized disability." Pl.'s 56(a)(2) Statement at 1, ECF No. 29-3 (May 26, 2022) ("SMF").

The EEO Policy also provides that "Stop & Shop will make reasonable accommodations, as required by law, for qualified individuals with known legally recognized disabilities . . . unless doing so would result in an undue hardship to the business." *Id*. at 2.

The EEO Policy further provides that "retaliation is strictly prohibited against any individual who makes a good faith complaint of discrimination or harassment, or against any individual who participates in an investigation of such a complaint, or any other form of retaliation prohibited by law." *Id*. at 3. The EEO Policy "applies to all aspects of employment, including selection, hiring, compensation, promotion, job assignment, discipline, discharge, . . . and any other terms or conditions of employment." *Id*. at 4.

Anyone who violates the EEO Policy or engages in any type of unlawful discrimination, harassment, or retaliation is subject to disciplinary action, up to and including termination of employment. *Id.* at 5.

The EEO Policy encourages employees to report violations to any Manager or Human Resources representative or to Stop & Shop's Check-In Line. *Id*. at 6. Mr. Osei-Assibey acknowledged that he reviewed and understood the EEO Policy when he began working for Stop & Shop. *Id*. at 7.

### 2. Mr. Osei-Assibey's Employment History

Around October 17, 2016, Stop & Shop hired Mr. Osei-Assibey as a full-time Customer Service Manager in the Newington, Connecticut store. *Id.* at 8. At the time of his hire, Plaintiff's name was Kwame Sekyere. Plaintiff changed his named to Derek Osei-Assibey in or around 2017 when he became a United States citizen. *Id.* at 9.

The Customer Service Manager is one of three "Associate Store Manager" level positions. *Id.* at 10. The other Assistant Store Managers include the Perishable Manager and the Non-Perishable Manager. *Id.* As a Customer Service Manager, Mr. Osei-Assibey was responsible for managing the recruiting, hiring, and training of new associates and overseeing the front-end, cash office, and customer service operations. *Id.* at 11. Mr. Osei-Assibey remained a Customer Service Manager throughout his employment at Stop & Shop. *Id.* at 12. At the time of his termination, Mr. Osei-Assibey reported directly to Store Manager Marsheila Spruiell ("Ms. Spruiell"). *Id.* at 13.

In October 2017, Stop & Shop verbally counseled Mr. Osei-Assibey after a customer complained about feeling harassed and embarrassed by Mr. Osei-Assibey. *Id.* at 14. The customer attempted to use a coupon on a product that was excluded and requested to speak with a manager. *Id.* at 15.

As a result of this incident, Store Manager, Jennifer Mohrlein ("Ms. Mohrlein"), and Human Resources Business Partner Robert Moritko ("Mr. Moritko") gave Mr. Osei-Assibey a verbal warning for unprofessional conduct and counseled him to be aware of his non-verbal communication. *Id.* at 17. At the time, Mr. Moritko counseled Mr. Osei-Assibey to slow down so that customers do not think he is "about to attack them." *Id.* at 18.

On November 16, 2018, as a result of an unsubstantiated complaint received on the tip line, Mr. Moritko, District Director Mike Mignola, and Ms. Mohrlein met with Mr. Osei-Assibey to review concerns around his approach with dealing with situations and associates. Ex. 8 to Def.'s Mem. Mr. Moritko characterized a complaint by Mr. Osei-Assibey about his supervisor impermissibly tampering with his timecard as "unprofessional and insubordinate." Ex. 1 to Def.'s Mem. at 64.

Stop & Shop transferred Mr. Osei-Assibey's to Store 628, in Bristol, Connecticut, and gave him a written warning for violating the Professional Conduct Policy. SMF at 24. Mr. Osei-Assibey remained a Customer Service Manager following the transfer to Store 628. *Id.* at 25. On Stop & Shop's five-point rating scale, Mr. Osei-Assibey received an overall performance rating of two (Partially meets performance expectations) for 2016. *Id.* at 26. Mr. Osei-Assibey also received a rating of two in his performance appraisal for 2017, which specifically indicated that he "has been delegated numerous tasks that the store manager needed to continuously follow up on" and "needs to work on communication, listening, following up on tasks assigned to him, and take ownership of assignments." *Id.* at 27.

Mr. Osei-Assibey's 2017 performance appraisal described him as "need[ing] to learn to take constructive criticism" and noted that when responding to feedback he "tends to become very defensive, stops listening, and is coming up with a response before you are done talking." Ex. 1 to Def.'s Mem. at 55. Following Mr. Osei-Assibey's second consecutive overall performance rating of two (Partially meets performance expectations), in April of 2018, Stop & Shop placed Mr. Osei-Assibey on a performance improvement plan ("PIP"). SMF at 29. In the PIP, Ms. Mohrlein stated, among other things, that Mr. Osei-Assibey "needs to improve his

follow through and meet deadlines" and "needs to show more initiative learning the parts of the business he still does not understand." *Id.* at 30.

### 3.  Mr. Osei-Assibey's Alleged Disability

Mr. Osei-Assibey allegedly developed sleep apnea during his employment at Stop & Shop. *Id.* at 31. On April 20, 2019, Mr. Osei-Assibey went to a walk-in clinic and asked the doctor for a note to provide to Stop & Shop indicating that he could not work more than 8-10 hours a day and no more than 5 days a week, until approved by a doctor. *Id.* at 32. The doctor provided Mr. Osei-Assibey with the note he requested, which Mr. Osei-Assibey in turn submitted to Stop & Shop. *Id.* at 33. The April 20, 2019 note was Osei-Assibey's first request for an accommodation from Stop & Shop. *Id.* at 34. Stop & Shop granted Mr. Osei-Assibey's requested accommodation and abided by the restrictions set forth in the April 20, 2019 note. *Id.* at 35. On May 21, 2019, Mr. Osei-Assibey submitted a note to Stop & Shop from the same doctor stating that he could return to regular work and activities as of May 21, 2019. *Id.* at 36.

On July 31, 2019, Mr. Osei-Assibey again went to the walk-in clinic and asked the doctor for another note placing restrictions on the number of hours he could work in a week. *Id.* at 37. The doctor, again, provided Mr. Osei-Assibey with the note he requested indicating that he could "only work up to 5 days a week no more than 10 hours a day, until sleep study is done." *Id.* at 38. Mr. Osei-Assibey submitted this note to Stop & Shop, and Stop & Shop again provided Mr. Osei-Assibey with his requested accommodation by allowing him to work only five days a week and no more than 10 hours a day. *Id.* at 39.

On December 20, 2019, Mr. Osei-Assibey fainted at work. *Id.* at 40. After Mr. Osei-Assibey fainted, he provided Stop & Shop with a doctor's note indicating that he may return to

work on December 30, 2019, without any restrictions. *Id.* at 41. Stop & Shop provided Mr. Osei-Assibey with the ten-day leave recommended by his doctor. *Id.* at 42.

At his deposition, Mr. Osei-Assibey testified as follows:

> Q: But notwithstanding the fact that you were unable to give them a timeline, [Stop & Shop] accommodated you precisely as your doctor requested each time you brought them a doctor's not requesting an[] accommodation, right?
> A: They did accommodate me. But he kept saying – if you accommodate somebody and then you come back and say that we can not accommodate you unless you give them a time, I thought that he didn't accommodate me then because there wasn't a timeline and I couldn't give him a timeline.
> Q: So the only way in which you believe Stop & Shop failed to accommodate you, is that Rob Moritko approached you on several occasions and told you they couldn't accommodate you unless they – unless you gave them a timeline –
> A: Yes, correct.
> Q: – of how long you would need the accommodations, correct?
> A: Yes.
> Q: Other than that, Stop & Shop complied in every way you and your doctor asked to reduce your schedule when you requested they do that?
> A:Yes.

*Id.* at 43.

No Stop & Shop employees ever made any negative comments to Mr. Osei-Assibey about his sleep apnea condition. *Id.* at 44. Mr. Osei-Assibey testified that neither Julie Pinard, Human Resources Business Partner Julio Colón ("Mr. Colón") nor Director Brian Betesh ("Mr. Betesh") ever said anything to him that suggested that they were even aware that he had any alleged disability. *Id.* at 45.

### 4. Mr. Osei-Assibey's Termination from Stop & Shop

On February 7, 2020, Ms. Spruiell sent an e-mail to Mr. Betesh and Mr. Colón regarding an incident that had occurred the day before (February 6) involving Mr. Osei-Assibey. *Id.* at 46. Ms. Spruiell reported that Mr. Osei-Assibey had called the store at approximately 11:55 p.m. and

asked an Assistant Customer Service Department Head, Michelle Whiting ("Ms. Whiting"), if Perishable Manager Gail Aldrich ("Ms. Aldrich") was still working. *Id.* at 47. Ms. Whiting told Mr. Osei-Assibey that she did not know, but Trainee Manager Lakeisha Gary was working, and happened to be standing near her. *Id.* at 48.

On February 7, 2020, Mr. Colón met with Mr. Osei-Assibey. Ex. 1 to Def.'s Mem. at 79, 181. During the course of the same meeting, and after receiving Mr. Colón assurances that neither Mr. Colón nor Defendant would retaliate against Mr. Osei-Assibey for sharing his concerns regarding his Store Manager's conduct, *id.*, Mr. Osei-Assibey lodged a host of complaints against Ms. Spruiell, including:

(a) that one employee had conveyed that he wanted to quit because Ms. Spruiell denied him time off in order to attend a doctor's appointment. Ex. 1 to Def.'s Mem. at 68;

(b) that Ms. Spruiell had become "very upset" upon learning that Plaintiff had hired a pregnant woman, and asked Plaintiff, "[W]hy did you hire her, didn't you notice she was pregnant[?]," to which Plaintiff responded by conveying "[I]t is illegal to discriminate against pregnant wom[e]n. You cannot decide not to hire somebody based on the fact that she's pregnant. She was very, very upset." *Id.* at 66–67; and

(c) that "she was discriminating—she was making me leave late on a Saturday [while] other female colleagues she was letting them leave early. *Id.*

Mr. Osei-Assibey indicated that he believed this showed that Ms. Spruiell may "favor" Ms. Aldrich. *Id.* at 52. Mr. Osei-Assibey also claimed that other associates had complained to him about Ms. Spruiell. Id. at 54. Following the meeting, Mr. Osei-Assibey provided Mr. Colón with a list of dates on which he believed the Night Crew Chief had begun working at 10 p.m. and

stated that "if [the Night Crew Chief] came in so Gail could leave early . . . that is not fair and consistent." SMF at 55.

Mr. Osei-Assibey also admitted that Ms. Spruiell had brought the Night Crew Chief in at 10 p.m. on at least two occasions that he could recall to allow him to leave early. *Id.* at 56. Mr. Colón sent an e-mail to Ms. Spruiell with the list of dates the Night Crew Chief allegedly began his shift at 10 p.m. that Mr. Osei-Assibey provided and inquired if Aldrich had left early on those dates and, if so, for what reason. *Id.* at 57.

Ms. Spruiell explained that when the Night Crew Chief was brought in early, it was not to allow any employees to leave early. *Id.* at 58. She also explained that it was a business decision, based in large part on the store's unloading and restocking needs. *Id.* at 59. Finally, Ms. Spruiell also indicated that the only instances where Ms. Aldrich was allowed to leave at 10 p.m. were due a schedule change based on legitimate business reasons. *Id.* at 60. One individual expressed no concerns with Ms. Spruiell and denied complaining to Mr. Osei-Assibey about her. *Id.* at 63.

Stop & Shop allegedly concluded that Mr. Osei-Assibey's conduct violated its Professional Conduct Policy. *Id.* at 69. On March 20, 2020, Mr. Colón and Mr. Betesh met with Mr. Osei-Assibey to issue a Final Warning. *Id.* at 70. Stop & Shop allegedly only intended to issue the Final Warning during the meeting on March, 20, 2020, with Mr. Colón and Mr. Betesh. Ex. 1 to Def.'s Mem. at 81, 142–143. After being presented with the Final Warning, Osei-Assibey ripped it up. SMF at 71.

Based on his prior history of unprofessional conduct, culminating in his unacceptable outburst during the March 20, 2020 meeting with Colón and Betesh, Stop & Shop decided to terminate Mr. Osei-Assibey's employment. SMF at 80. On March 31, 2020, Mr. Colón and Mr. Betesh notified Mr. Osei-Assibey that Stop & Shop was terminating his employment. *Id.* at 81.

Defendant itself characterizes Mr. Osei-Assibey's complaints about Ms. Spruiell's disparate treatment of him regarding scheduling as complaints of discrimination. Ex. 2 to Def.'s Mem. at 14–15 ("Verified Interrogatory Response Excerpts") ("20. Please describe each and every complaint which the Plaintiff made to the Defendant Company concerning discrimination or retaliation. [Response]: '. . . Plaintiff told Mr. Colón that Ms. Spruiell allegedly had brought in the overnight team on certain occasions (mostly Saturdays) at 10 p.m. He indicated that on at least two occasions, the overnight team starting at 10 p.m. allowed him to leave at that time and he questioned whether the overnight team was being brought in 'early' to allow other employees to leave in a manner that was 'not fair and consistent.' . . . Mr. Colón investigated Plaintiff's stated concerns[.]"). SMF at 85.

In Mr. Osei-Assibey's view, he performed the functions of his position at or above satisfactory levels. Ex. 1 to Def.'s Mem. at 137–138 ("Well, first of all I was a good employee and I did all of my functions very well. When I was in the Newington store, we . . . won an award. I know that we did very well in the store in regards the metrics in regarding to sales, the engagement score was up. We had something called the MPS4 score which is the customer service score was up, so we excelled in everything that we did. And I -- and I was part of the team that made that happen, So I knew that I was excelling in my duties. I even was able to recommend them to hire about four or five people [who] were hired straight to full time. . . . So I was executing my duties very well. When I came to store 628 in Bristol I was also executing my duties very well. We went back on a massive hiring [spree], the store was functioning well. So all those things that you showed me in the exhibits, if I remember correctly, when I have discussions with them about those things they never said that I was going to be written up. Some of the meetings that we had they wanted me to explain what explain what happened and I

explained to them. And then they smiled and they acknowledged my explanation and they never told me that I wasn't good enough[.]"). SMF at 86.

Mr. Osei-Assibey claimed to be aware of another similarly situated assistant store manager, Frank Gilletti ("Mr. Gilletti"), who, like Mr. Osei-Assibey, had also torn up a disciplinary action which was being issued to him, but who had not previously opposed discriminatory employment practices. According to Mr. Osei-Assibey, Mr. Gilletti was not terminated. SMF at 87.

### B. Procedural History

On December 23, 2020, Defendant filed a Notice of Removal that included Mr. Osei-Assibey's Complaint. Notice of Removal.

On January 29, 2021, Defendant filed an Answer to Mr. Osei-Assibey's Complaint. Def.'s' Answer, ECF No. 16 (Jan. 29, 2021) ("Answer").

On May 05, 2022, Defendant moved for summary judgment. Def.'s Mem.

On May 26, 2022, Mr. Osei-Assibey filed his opposition to Defendant's motion for summary judgment. Pl. Mem. in Opp'n to Def.'s Mot. for Summ. J., ECF No. 29 (May 26, 2022) ("Pl. Opp'n.").

On June 16, 2022, Defendant filed its reply to Mr. Osei-Assibey's response to Defendant's motion for summary judgment. Def.'s Reply to Pl. Mem. in Opp'n to Def.'s Mot. for Summ., ECF No. 34 (June 16, 2022) ("Def. Reply").

## II.   STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine

dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-moving party may defeat the motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal citation omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* "If the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be

granted." *Anderson*, 477 U.S. at 250 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968); *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967)).

When deciding a motion for summary judgment, a court may review the entire record, including the pleadings, depositions, answers to interrogatories, admissions, affidavits, and any other evidence on file to determine whether there is any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pelletier v. Armstrong*, No. 3:99-cv-1559 (HBF), 2007 WL 685181, at *7 (D. Conn. Mar. 2, 2007). In reviewing the record, a court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in [his] favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (internal citation omitted). If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the non-moving party for the issue on which summary judgment is sought, then summary judgment is improper. *See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

## III.   DISCUSSION

Defendant moves for summary judgment on Mr. Osei-Assibey's claims that Defendant violated the "Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(b)(1), by failing to accommodate his alleged disability and terminating his employment because of his disability and/or perceived disability," and "that [Defendant] [allegedly] retaliated against him for opposing discriminatory conduct in violation of Conn. Gen. Stat. § 46a-60(b)(4). Def.'s Mem. at 8.

The Court will address each CFEPA claim in turn.

### A. CFEPA Discrimination Claim[1]

Mr. Osei-Assibey has abandoned his disability discrimination, perceived disability discrimination, and failure to accommodate claims alleged in Count One. *See* Pl. Opp'n at 1 ("Plaintiff does not contest entry of summary judgment on Count One, which alleges disability discrimination and failure to accommodate under Conn. Gen. Stat. § 46a-60(b)(1)."); *cf. Ludwiczak v. Hitachi Cap. Am. Corp.*, 528 F. Supp. 2d 48, 59 (D. Conn. 2007) ("Federal courts may deem a claim abandoned when a Party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." (quoting *Douglas v. City of Waterbury*, 494 F. Supp. 2d 112, 122 (D. Conn. 2007))).

Accordingly, the Court will grant summary judgment on Mr. Osei-Assibey's CFEPA discrimination claim as a matter of law.

### B. CFEPA Retaliation Claim[2]

Mr. Osei-Assibey's CFEPA retaliation claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zboray v. Wal-Mart Stores E., L.P.*, 650 F. Supp. 2d. 174, 179 (D. Conn. 2009) (applying the burden-shifting analysis to a retaliation claim under CFEPA).

Under this standard, to establish a prima facie case of retaliation, Mr. Osei-Assibey must show "(1) participation in a protected activity; (2) that the defendant knew of the protected

---

[1] Conn. Gen. Stat. § 46a-60(b)(1) ("It shall be a discriminatory practice in violation of this section: . . . For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against any individual in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, gender identity or expression, marital status, national origin, ancestry, present or past history of mental disability, intellectual disability, learning disability, physical disability, including, but not limited to, blindness, status as a veteran or status as a victim of domestic violence . . . .").

[2] Conn. Gen. Stat. § 46a-60(b)(4) ("It shall be a discriminatory practice in violation of this section: . . . For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice . . . .").

activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005). "If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016) (citing *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996)).

Mr. Osei-Assibey then must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by [the defendant] were false, and that more likely than not discrimination was the real reason for the employment action." *Serby v. New York City Dep't of Educ.*, 526 F. App'x. 132, 135 (2d Cir. 2013) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000)).

At this stage, "the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." *Jute*, 420 F.3d at 173 (citing *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 5 8 (2d Cir. 1987)). Retaliation claims thus proceed in three parts. First, "[i]f a plaintiff sustains the initial burden, a presumption of retaliation arises." *Id*. Second, "the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Id.* (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998)). Third, "once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action." *Id.* (citing *Fields v. N.Y. State Off. of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120 21 (2d Cir. 1997)).

Defendant argues that Mr. Osei-Assibey failed to engage in any protected activity and cannot plausibly "attribute any alleged favoritism to gender-based discrimination at the time." Def.'s Mem. at 29. In addition, Defendant argues that "there is no evidence of causal connection between this allegation [of gender-based discrimination] and the termination of his employment." *Id.*

Mr. Osei-Assibey argues that he has established a prima facie case of retaliation because "[w]hen viewed in a light most favorable to Plaintiff, there is ample evidence for a factfinder to conclude both that Plaintiff engaged in protected activity, and that Defendant terminated him motivated by the same." Pl. Opp'n at 10. Mr. Osei-Assibey further argues that "[he] engaged in protected activity by opposing what he reasonably believed to be unlawful discriminatory practices on three separate occasions.

> First, on February 6, 2020, [Mr. Osei-Assibey] communicated to a coworker his belief that what Defendant's store manager was doing was "unfair," insofar as [Mr. Osei-Assibey], a male, was being forced to work shifts through midnight, whereas similarly situated female coworkers were being allowed to leave early. Doc. 27-20. Plaintiff's supervisor, Ms. Spruiell, was made aware of the foregoing remarks on the following day, and communicated the same to Mr. Colon and the district manager, [Mr.] Betesh.

*Id.* at 11 (citations omitted).

> Second, on February 7, 2020, [Mr. Osei-Assibey] met with Colon directly, and in the ensuing conversation, he made Colon aware that Spruiell had (1) castigated [Mr. Osei-Assibey] for having hired a pregnant woman; (2) had arguably failed to accommodate another coworker's medical appointment and (3) was treating employees disparately with scheduling on the basis of sex. These concerns, in the context of a direct report to a human resources employee, are unequivocally a "communicat[ions] to [Defendant] a belief that [it] engaged in a form of employment discrimination, [which] constitutes the employee's opposition to the activity." At bottom, a reasonable factfinder could view [Mr. Osei-Assibey]'s evidence and find that he engaged in protected activity with respect to his conversation with Mr. Colon on February 7, 2020.

*Id.*

> Finally, [Mr. Osei-Assibey] engaged in protected activity during the course of the meeting between himself, Colon, and Betesh on March 20, 2020. Specifically, [Mr. Osei-Assibey] relayed detail that he reasonably believed that he was being subjected to retaliation on the basis of his having lodged complaints against Spruiell on both February 6, and February 7, 2020. He specifically and directly conveyed to Colon that the discipline Colon was attempting to issue to him was in retaliation for his prior complaints concerning [Ms.] Spruiell's discriminatory conduct. Accordingly, [Mr. Osei-Assibey] became upset, and conveyed that the warning was retaliatory before tearing up the retaliatory warning and exiting the meeting.

*Id.* at 12. Mr. Osei-Assibey notes "Conn. Gen. Stat. § 46a-60(b)(4)'s straightforward language prohibiting 'any . . . employer [from] discharg[ing], expel[ling] or otherwise discriminat[ing] against any person because such person has opposed any discriminatory employment practice[.],' *id.*, and that "a reasonable juror could credit [his] version of events, construe the subject warning itself as retaliatory, and consequently deem Plaintiff's protests on March 20, 2020, as itself an opposition to Defendant's unlawful retaliation." *Id.*

In reply, Defendant argues that Plaintiff fails to show that he, indeed, engaged in protected activity on these three occasions. Def. Reply at 2.

> First, Plaintiff claims to have "communicated to a coworker [Lakeisha Gary] his belief that what Defendant's store manager was doing was 'unfair.'" (Id.) As an initial matter, Plaintiff admitted that the only alleged "complaint" he filed was with Julio Colón:
>> Q: And did you ever file any complaint or internal complaint other than the one that you spoke with Julio Colon about Marshei[]la?
>> A: No. The only complaint I filed was Julio because Julio was HR manager.
> (Dkt. 27-3 at 143.) Therefore, Plaintiff, himself, admitted that his discussion with his coworker [Gary] was not protected activity.

*Id.*

> Second, Plaintiff argues that he engaged in protected activity when he told Colón that Spruiell had (1) "castigated Plaintiff for having

hired a pregnant woman," (2) "arguably failed to accommodate another coworker's medical appointment," and (3) "was treating employees disparately with scheduling on the basis of sex." (Dkt. No. 29 at 11.) None of these alleged "complaints" constitute protected activity. With respect to his claim relating to the hiring of a pregnant woman, all Plaintiff claims is that his store manager asked why Plaintiff hired a pregnant woman. (Dkt. No. 29-1 at 66.) Significantly, by Plaintiff's own admissions, the pregnant woman was hired. (Id.) Therefore, even crediting Plaintiff's allegation that he raised this concern with Colón, the conduct Plaintiff raised was not itself unlawful and thus did not give Stop & Shop notice that he was engaging or reasonably believed he was engaging in a protected activity. See Fattoruso v. Hilton Grand Vacations Co., LLC, 525 F. App'x 26, 27–28 (2d Cir. 2013) (finding that Plaintiff failed to show that he participated in a protected activity known to the Defendant because the conduct complained of was "not itself unlawful").

*Id.* at 3.

Third, Defendant argues that Mr. Osei-Assibey's "claim that his conduct at the March 20, 2020 meeting could arguably be construed as protected activity fails as a matter of law." *Id.* at 4. Defendant contends that

> [w]hile Plaintiff argues that "the law protects a wide range of activity in opposition to illegal discrimination" (Dkt. No. 29 at 10), "not all forms of protest are protected by Title VII's prohibition on retaliation." *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000). "[D]isruptive or unreasonable protests against discrimination are not protected activity under Title VII and therefore cannot support a retaliation claim." *Id.*

Def. Reply at 4. Defendant argues that Mr. Osei-Assibey fails to identify any protected activity. *Id.*

In addition, Defendant replies that Mr. Osei-Assibey fails to establish a prima facie case of the retaliation claim because he "complained of . . . discrimination *after* he was accused of very serious misconduct and while Defendant was investigation one of those allegations." *Id.* at 6 (internal quotation marks omitted); *see Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job

actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Defendant further argues that "[Mr. Osei-Assibey's] conduct at the March 20, 2020, meeting, during which he admittedly, at a minimum, ripped up a Final Warning, raised his voice and made physical contact with Colón, is undisputedly disruptive, excessive, and unreasonable and, therefore, does not constitute protected." *Id.* at 6. In addition, Defendant argues that "[Mr. Osei-Assibey] has failed to establish that [Defendant's] legitimate, non-retaliatory reason is false and a pretext for unlawful retaliation." *Id.*

The Court disagrees.

At this stage of the case, Mr. Osei-Assibey must have admissible evidence with respect to his alleged complaints about protected activity, and even if there was such activity, that any alleged legitimate, non-discriminatory reason on the part of the Defendant was mere pretext, and/or otherwise probative of discrimination. *See Jute*, 420 F.3d at 173 (requiring "proffered admissible evidence . . . sufficient to permit a rational finder of fact to infer a retaliatory motive." (citation omitted)). With respect to his prima facie case, Mr. Osei-Assibey claims to have engaged in a protected activity in three ways: (1) a complaint of discrimination to a co-worker; (2) a complaint of discrimination to the Defendant's HR manager, Mr. Colón; and (3) a complaint of discrimination in the March 20, 2020 meeting, which ultimately resulted in his termination.

The complaint of discrimination to a co-worker alone, rather than also to management, does not constitute a "protected activity." *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (recognizing that a protected activity includes "making complaints to management"); *Matima,* 228 F.3d at 78–79 (same); *see also Lovell v. Maimonides Med. Ctr.*, No. 11-CV-4119

KAM LB, 2013 WL 4775611, at *16 (E.D.N.Y. Sept. 6, 2013) ("[P]laintiff's comment to his co-workers does not constitute a protected activity."). Without evidence that the Defendant actually knew about the specific complaints Mr. Osei-Assibey allegedly made to his co-workers, this is not admissible evidence in support of a retaliation claim, but instead inadmissible evidence, constituting speculation. *Cf. Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 88 (2d Cir. 2005) (concluding that "plaintiff's hypothesis is mere speculation . . . too thin to support an inference that defendants knew plaintiff's protected status at the time of her discharge and discriminated against her on the basis of age" (internal quotation marks omitted)); *see also Risco v. McHugh*, 868 F. Supp. 2d 75, 110 (S.D.N.Y. 2012) ("[I]nformal complaints must be sufficiently specific to make it clear that the employee is complaining about conduct prohibited by Title VII.").

Indeed, in his filings, Mr. Osei-Assibey has cited to no case where complaints to a co-worker about alleged discrimination in the workplace, rather than directly to the company itself, fell within the scope of protected activity recognized by the law for purposes of maintaining a claim of retaliation.

But the alleged complaints of discrimination to the Defendant's HR manager, while limited and arguably thin, nevertheless involve credibility determinations to be resolved by a jury, not this Court, at least right now. *See Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015) ("To survive summary judgment, the nonmovant must merely show that reasonable minds could differ as to the import of the evidence . . . in the record." (internal citations and quotation marks omitted)); *Rojas v. Roman Cath. Diocese of Rochester*, 660 F.3d 98, 104 (2d Cir. 2011) ("[In applying a summary judgment standard,] a district court generally should not weigh evidence or assess the credibility of witnesses . . . ." (internal quotation marks omitted)).

Mr. Osei-Assibey asserts that he raised three issues with Mr. Colón at their meeting on February 7, 2020. Pl. Opp'n at 11. The first of this trio of alleged complaints to HR involves Mr. Osei-Assibey being "castigated" for "having hired a pregnant woman." *Id.* The second involves an alleged failure to accommodate another worker's request for time off related to a medical appointment. *Id.* And the third involves alleged complaints about the disparate scheduling of employees based on gender. *Id.* While Mr. Osei-Assibey alone provides the substance of any of these three complaints, because the record evidence indicates that they were communicated to the Defendant, through Mr. Colón, the HR manager, they are sufficient to create a genuine issue of material fact as to whether these complaints, rather than Mr. Osei-Assibey's performance, resulted in his termination. *See Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) ("The plaintiff's burden in this regard is *de minimis*, and the court's role in evaluating a summary judgment request is to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." (citations and internal quotation marks omitted)).

Mr. Osei-Assibey's remaining retaliation claim, however, will not include whether anything that happened during the March 20, 2020 meeting with Mr. Osei-Assibey and others constituted a complaint, and therefore protected activity. Because the Defendant has provided a legitimate, non-discriminatory reason for terminating him regarding this incident, there must be sufficient evidence in the record from which a jury could conclude that any employment action, including termination, would not have resulted but for the retaliation. *See Graziadio*, 817 F.3d at 429 ("If the plaintiff makes out a prima facie case, the defendant must demonstrate a legitimate, non-discriminatory reason for its actions; if the defendant does so, the plaintiff must then show that defendant's proffered explanation is pretextual." (internal citations omitted)).

On this issue, Mr. Osei-Assibey's only evidence is an alleged claim that another employee also ripped up a disciplinary notice, and he was not terminated. Yet, there is no admissible evidence to support this aspect of the claim at this stage of the case. *See Hicks*, 593 F.3d at 164 (recognizing that there must be "proffered admissible evidence . . . sufficient to permit a rational finder of fact to infer a retaliatory motive" (internal citation and quotation marks omitted)).

First, Mr. Osei-Assibey lacks personal knowledge of this incident. Def's Reply at 7 (citing to Mr. Osei-Assibey's deposition testimony, where he answered "Yes" to a question that "all the information [he had] about Mr. Gilletti's circumstances come from [his] discussions with him"); *see* Fed. R. Evid. 602 ("A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *Romanelli v. Long Island R.R. Co.*, 898 F. Supp. 2d 626, 633 (S.D.N.Y. 2012) ("[Plaintiff] lacks personal knowledge as to the exact nature of all the substances to which he was exposed or their impact on his health."); *Woodman*, 411 F.3d at 87 ("The witness's testimony must be based on events perceived by the witness.").

Second, as Mr. Osei-Assibey has no personal knowledge of this other situation, any testimony offered by him would be inadmissible hearsay. *See Kleftogiannis v. Inline Plastics Corp.*, No. 3:18-CV-1975 (VAB), 2020 WL 3036026, at *5 (D. Conn. June 5, 2020) (citing *Bldg. Indus. Fund v. Loc. Union No. 3, Int'l Bhd. of Elec. Workers, AFL-CIO*, 992 F. Supp. 162, 172–73 (E.D.N.Y. 1996) (statements of information regarding conduct at issue were told to the affiants and thus constituted "classic examples of hearsay: out of court statements made by someone other than the witness offered for the truth of the matter asserted" (citing Fed. R. Evid. 801(c)))); *Smith v. AFSCME Council 4*, No. 3:08-CV-1735 (RNC), 2012 WL 3580285, at *8 n.9

(D. Conn. Aug. 17, 2012) ("Plaintiff states that Maestre-Soto discussed the charges he filed with her and she made changes that he incorporated. If she did not observe the charges for herself, this evidence is hearsay and inadmissible.").

Third, there is nothing in this record, other than Mr. Osei-Assibey's statement, which would suggest that this hearsay issue could be cured. *Starzynski v. Stanley Black & Decker, Inc*., No. 3:20-CV-00478 (VLB), 2021 WL 5770006, at *3 (D. Conn. Dec. 6, 2021) ("A party cannot rely on inadmissible hearsay in opposing a motion for summary judgment . . . absent a showing that admissible evidence will be available at trial." (quoting *Lewis v. Town of Waterford*, 239 F.R.D. 57, 60 (D. Conn. 2006))), *aff'd*, No. 21-3040-CV, 2022 WL 17825920 (2d Cir. Dec. 21, 2022). Significantly, there is nothing in the record about what Mr. Gilletti's testimony actually would be, either through a deposition or affidavit, only what Mr. Osei-Assibey said he heard from him.

Fourth, and finally, even if the hearsay issue could be cured, there is nothing in this record to suggest that evidence related to Mr. Gilletti's situation would not otherwise be inadmissible under Rule 403 of the Federal Rules of Evidence, as any of its probative value would be "substantially outweighed by a danger" of "confusing the issues." *Cf. Shumway. v. United Parcel Serv., Inc.*, 118 F.3d 60, 65 (2d Cir. 1997) (holding that plaintiff's "conclusory statements of no probative value" regarding allegedly similarly situated employees were "unsupported by admissible evidence" and therefore did not raise a genuine issue of material fact); *see also Vaspasiano v. Metro-N. R.R. Co*., No. 3:19-CV-00675 (OAW), 2022 WL 16541077, at *4 (D. Conn. Oct. 28, 2022) ("Plaintiff references two accidents that preceded his own and that involved Metro-North employees. . . . The accidents are not 'substantially similar' to Plaintiff's accident, as the record simply lacks adequate detail as to the circumstances of those

two prior accidents.").

As a result, the March 20, 2020 incident cannot serve as a basis for Mr. Osei-Assibey's remaining retaliation claim as a matter of law.

Accordingly, Defendant's motion for summary judgment will be denied as to Mr. Osei-Assibey's retaliation claim, although this claim will be limited consistent with this opinion.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED in part** and **DENIED in part.**

The disability discrimination claim has been dismissed, but the retaliation claim shall remain, but it will be limited, consistent with this opinion.

**SO ORDERED** at Bridgeport, Connecticut this 31st day of March, 2023.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE